IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. **5:17-CR-50027-TLB** |
| | ) | |
| **PENG CHANTHALANGSY,** | ) | |
| Defendant. | ) | |

## MOTION TO SUPPRESS STATEMENT

COMES NOW the defendant, **Peng Chanthalangsy**, by the Office of the Federal Public Defender and its attorney, **Jack Schisler**, and does hereby respectfully move for the following: for an order excluding from the government's case-in-chief statements made by the defendant during a custodial interrogation.

### Background

Mr. Chanthalangsy faces charges involving methamphetamine delivery as well as possession of contraband images found on a computer. He was arrested in connection with drug charges by state authorities and posted bond. He was later arrested by federal authorities in connection with a criminal complaint alleging possession of child pornography. He first appeared in connection with the complaint on March 30, 2017, and was arraigned on these charges, as well as drug charges, on April 24, 2017. He has been detained since the federal arrest on March 28, 2017.

### Facts

On March 28, 2017, Mr. Chanthalangsy, while in custody at the Rogers, Arkansas Police Department, was questioned by an agent from the Department of Homeland Security. The questioning was recorded on video. At 12:41:45, the video begins. At approximately 12:46:02, the questioning begins. At 12:47:22, just over a

minute into the questioning Mr. Chanthalangsy says "Before we speak . . . I think I need a lawyer."  Rather than ending the interview, the agent responds:

> "Nope.  Give me one second.  I'm going to get your biographical information off (sic) the way and then I'll explain to you what's going on.  Alright you don't need an attorney . . . this is just your name, date of birth, where you live, all that good stuff."

The questioning resumes, and does pertain—at first—to benign biographical information. However, some of that some of that biographical information is potentially incriminating, for instance Mr. Chanthalangsy's residence, the same residence where the contraband was found pursuant to the search warrants.   And beyond that, the questioning then turns toward Mr. Chanthalangsy's employment, his job duties, his rate of pay, his involvement with IT (information technology), and his knowledge of computers.   The agent says "So, you know a thing or two about computers?"   Mr. Chanthalangsy responds with statements that could be used to incriminate him in the context of a prosecution for possession of contraband found on a computer.   The interrogation continues with questions pertaining to computer equipment found in Mr. Chanthalangsy's home pursuant to a search warrant, and Mr. Chanthalangsy again responds with statements that could be used to incriminate him.   The agent next questions Mr. Chanthalangsy about the reason for the original search warrant, and whether it pertained to a drug investigation.   The agent then segues into the agent's own investigation into "digital contraband" found during a subsequent search of computer equipment seized as part of the drug investigation.   The agent asks leading questions, assuming in them that since the computer equipment belongs to Mr. Chanthalangsy, that he might recall what was found on the computer.   Mr. Chanthalangsy answers in the negative, but the agent continues, explaining his purpose

in talking to Mr. Chanthalangsy:

> "Like I told you, that digital contraband is what I need to talk to you about. Before I go any further with that though, I need you to review this form for me.  This form is gonna be for you and I to talk about that dig contra. there is a reason I want to talk to you about that--part of that task force is-- what we do is we try to locate stuff that shouldn't be on there, find it, get rid of it, and destroy it and that's my goal here today.  My goal here today is to talk to you about what was on there, how to find it, where it is on that computer, get rid of it, and destroy it, okay?"

The agent then asks questions about Mr. Chanthalangsy's ability to read and write in English in preparation for reviewing the form.  Mr. Chanthalangsy responds:  "Uh, is this where I got to get a lawyer?"  Rather than ending the interview, the agent responds that he needs Mr. Chanthalangsy to review the form, which Mr. Chanthalangsy does, reading it out loud, which reveals that it is an explanation of his rights under *Miranda* and a waiver of those rights.  Mr. Chanthalangsy says at 12:55:27 "Yeah, I need a lawyer."  Rather than ending the interview, the agent continues:  "You want a lawyer. That's fine."  The agent then reviews his investigation with Mr. Chanthalangsy, advising him of images and videos found, describing one image, and advising Mr. Chanthalangsy that much more damaging evidence will likely be found.  The agent attempts to get Mr. Chanthalangsy to continue answering questions by saying:

> "The end game for me in terms of my part of the investigation is was (sic) to have you kind of help us get through what we needed to do and obviously if you want an attorney we can't do that."

The agent also states:

> "I would have liked to talk to you about the computers, and how to find the stuff to get it off and destroyed because at the end of the day that only would have helped you."

This statement ends at 13:01:00.  The agent continues to talk to Mr. Chanthalangsy, and at 13:05:54, another agent enters the room and begins to talk to him,

advising that he is with the drug unit of Homeland Security. This agent confirms that Mr. Chanthalangsy is under arrest for the child pornography charges, and that he will be charged with the drug offenses that led to his initial arrest by state authorities. The second agent advises Mr. Chanthalangsy that he can change his mind, waive his right to an attorney, and cooperate with the agents, saying "There's a lot of stuff on that computer we need to know about. In addition to the child porn, there's drug related stuff on them, alright, you understand? So you don't want to cooperate at all right now?" Mr. Chanthalangsy declines. The second agent goes on to advise Mr. Chanthalangsy to talk to his attorney, saying the sooner he cooperates "the better it will be for you, okay?" Mr. Chanthalangsy responds to this question, asking how he can avoid being arrested. Some further discussion is had, but no further incriminating information is provided by Mr. Chanthalangsy.

<u>Law & Analysis</u>

*Custodial Interrogation*

In *Miranda v. Arizona*, the Court determined that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination required that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney. 384 U.S., at 479, 86 S.Ct., at 1630. *Edwards v. Arizona* 451 U.S. 477, *481-482 (1981). In the event a custodial interrogation takes place without *Miranda* warnings being given, the statements are rendered inadmissible. *Hannon v. Sanner* 441 F.3d 635, *636 -637 (8th Cir. 2006). *Miranda* defines "custodial interrogation" clearly:

> By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

*Miranda,* 384 U.S. at 444 (1966).

It is clear that Mr. Chanthalangsy was in custody. He arrived at the interrogation room in handcuffs, escorted by police, and left the room the same way. He was locked in the room when officers were not present. He was not free to leave this police-dominated environment. It is also clear that he was subjected to custodial interrogation. He was questioned by the agent, and the questions went far beyond routine booking questions or requests for basic biographical information, as they were keyed to the on-going investigation into contraband found in connection with the case, as the agent was clearly aware. "Interrogation for *Miranda* purposes refers to any questioning or conduct that the government officer should know is reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). *United States v. McLaughlin*, 777 F.2d 388, 391 (8th Cir. 1985).

*Invocation of Right to Attorney & Waiver*

> The Supreme Court clarified the *Edwards* rule in *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), saying that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* at 459, 114 S.Ct. 2350. To implicate *Edwards*, a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id.

*United States. v. Havlik, 710 F.3d 818, 821 (8th Cir. 2013).*

As the questioning in the instant case was clearly custodial, it should have been

proceeded by *Miranda* warnings without the need for the defendant to request an attorney.   However, here, Mr. Chanthalangsy did just that.   Further he never waived the right to have an attorney.   And while it is arguable that his first invocation of his right to an attorney--"Before we speak . . . I think I need a lawyer"--was equivocal simply because of the word "think," the agent's response makes it clear the agent understood it as a request for an attorney.   The agent first told Mr. Chanthalangsy "nope," and then explained why he, in fact, did not need an attorney.   The questioning then proceeded, and incriminating information resulted.   That Mr. Chanthalangsy's statement was clearly a request for an attorney is further supported by Mr. Chanthalangsy's second and third statements, "Uh, is this where I got to get a lawyer?" and "Yeah, I need a lawyer."   The third statement came after Mr. Chanthalangsy was shown a *Miranda* waiver form, which he declined to sign.

## Conclusion

As Mr. Chanthalangsy was subjected to custodial interrogation absent *Miranda* warnings, all of his statements during the interrogation must be suppressed and excluded from the government's case-in-chief.

WHEREFORE, the defendant respectfully requests the Court issue an order suppressing the statements and excluding them from the government's case-in-chief, or for a hearing on the matter.

Respectfully submitted,

                BRUCE D. EDDY
                FEDERAL PUBLIC DEFENDER
                WESTERN DISTRICT OF ARKANSAS

        By:   /s/ *Jack Schisler*
                Jack Schisler

Assistant Federal Public Defender
3739 N. Steele Blvd., Ste. 280
Fayetteville, AR 72701
(479) 442-2306

Counsel for Defendant

**CERTIFICATE OF SERVICE**

    I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing registered CM/ECF participants.

/s/ *Jack Schisler*
Jack Schisler
Assistant Federal Public Defender

S:\Chanthalangsy_Peng_2017_126\Motion to Suppress Statement Chanthalangsy, Peng.docx