```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
 2                  FAYETTEVILLE DIVISION
                                       )
 3   UNITED STATES OF AMERICA,         )
                                       )
 4       Plaintiff,                    )
                                       )
 5   VS.                               )  CASE NO. 5:17-CR-50027
                                       )
 6   CHANTHALANGSY PENG,               )
                                       )
 7       Defendant.                    )

 8

              TRANSCRIPT OF SENTENCING HEARING
 9       BEFORE THE HONORABLE TIMOTHY L. BROOKS
                January 12, 2018; 1:31 p.m.
10                 FAYETTEVILLE, ARKANSAS

11

     FOR THE GOVERNMENT:
12
         Mr. Dustin S. Roberts
13       U.S. Attorney's Office
         414 Parker Avenue
14       P.O. Box 1524
         Fort Smith, AR 72902
15       479-783-5125
         Dustin.Roberts@usdoj.gov
16

17   FOR THE DEFENDANT:

18       Mr. Ken Osborne
         Osborne Law Firm
19       P.O. Box 1345
         Fayetteville, AR 72702
20       (479) 521-7727

21

     Proceedings recorded in realtime via machine shorthand.
22   _____

23             Dana Hayden, CCR, RMR, CRR
             Federal Official Court Reporter
24               35 East Mountain Street
             Fayetteville, Arkansas 72701

25
```

1            THE COURT:  The next matter on the Court's

2    docket today is the case of the United States versus

3    Peng Chanthalangsy.  Our case number is 5:17-CR-50027,

4    defendant number 1.  Dustin Roberts is here on behalf of

01:31PM   5    the United States, Ken Osborne is here representing

6    Mr. Chanthalangsy, and Diem Nguyen is here from U.S.

7    probation.  She performed the presentence investigation

8    in this case.

9            Good afternoon, Mr. Chanthalangsy.

01:31PM  10            THE DEFENDANT:  Good afternoon.

11            THE COURT:  Sir, do you know and understand

12    that the purpose of our hearing today is to allow the

13    Court to impose its sentence upon you as a result of

14    your guilty plea in this case and resulting conviction?

01:32PM  15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  In the last 24 hours, have you

17    consumed any medications, drugs, or any other substance

18    that would impair your ability to understand what's

19    going on in the courtroom today?

01:32PM  20            THE DEFENDANT:  No.

21            THE COURT: Now, Mr. Osborne has been your

22    attorney for at least some period of time in this case;

23    is that correct?

24            THE DEFENDANT:  Yes.

01:32PM  25            THE COURT:  Are you fully satisfied with all of

Mr. Osborn e's legal services and representation of you in this case?

THE DEFENDANT:  Yes.

THE COURT:  All right, sir.  Well, let's begin our hearing with a brief review of the procedural history of your case.  You were originally indicted back on April 18th of last year.  That indictment charged you with multiple counts relating in some fashion to the distribution of controlled substances.  There was also a count, Count Five, that charged you with possession of child pornography, and there was also a forfeiture provision.

You then appeared back before this Court on August 1st of last year, and at that time you entered a plea of guilty to Count Five, which was the possession of child pornography.  You also consented to forfeiture. Now, I accepted your guilty plea at that point, but I deferred approval of your plea agreement until I had the opportunity to be informed by the results of the presentence investigation.

So since you were here last in August, that is the process we have been going through.  Officer Nguyen conducted that investigation.  She reported her initial findings to the attorneys and to the Court on October 2nd, in response to which the government indicated they

1    had no objections to the initial presentence report.

2            Your attorneys, on the other hand, lodged

3    twelve separate objections to the presentence report.

4    Officer Nguyen reviewed those objections but then

01:34PM  5    finalized her presentence report, and the finalized

6    version was filed on October 30th.

7            On that same date, Officer Nguyen filed a

8    document that we call the addendum to the presentence

9    report, and the addendum is where Officer Nguyen

01:35PM  10   explained why certain objections were being resolved and

11   why certain other objections were not being resolved.  I

12   believe there was even perhaps later a second addendum.

13           In any event, our rules require, sir, that when

14   dealing with these presentence reports, your attorney is

01:35PM  15   obligated to meet with you, to share the contents of the

16   presentence report with you, to explain the contents of

17   those documents to you, and to make sure that any

18   questions you may have about the presentence reports or

19   the addendums have been answered.

01:35PM  20           Let me ask you whether Mr. Osborne has done

21   that with you in this case.  Has he?

22           THE DEFENDANT:  Yes.

23           THE COURT:  All right.  Mr. Osborne, can you

24   please confirm for the record that you've received the

01:35PM  25   initial and final presentence reports, as well as the

addendums, and that you have reviewed those with

Mr. Chanthalangsy and that you've answered any and all

questions that he may have had?

MR. OSBORNE:  I have, your Honor.

THE COURT:  All right.  Since the presentence

report was finalized, the Court has received numerous

documents that it has reviewed in preparation for this

hearing.  I'm going to list these other items to make

sure to make sure that I reviewed everything that has

been submitted.

First of all, the government submitted a

sentencing memorandum, which the Court has reviewed.

Mr. Osborne, on behalf of Mr. Chanthalangsy, has also

submitted a sentencing memorandum, which the Court has

reviewed.  There have also been numerous letters of

support that have been submitted on behalf of

Mr. Chanthalangsy.

Mr. Chanthalangsy has lots of siblings and a

big family, and the Court feels like it's heard from

many of them, which, it sees that there are quite a few

in the audience today and so I certainly appreciate the

opportunity to have read and learned more about

Mr. Chanthalangsy from those letters.

The Court has also received numerous victim

impact statements and letters from the child victims of

pornography, including some from the series that have

been part of the relevant conduct here, 40 pages or so

worth of victim impact statements and letters.

        The Court has also received e-mail

01:37PM   communications from the attorneys to the effect that the

restitution -- victim restitution claims that have been

submitted in this case, that the parties have conferred

and have mutually agreed that an appropriate amount of

restitution for the seven victims that have made

01:38PM   requests for restitution would be in the sum of $1,000

per those seven victims, for a total of $7,000.

        I believe that that itemizes all of the

materials that I have reviewed.  Mr. Roberts, are you

aware of anything that I've left out?

01:38PM   MR. ROBERTS:  No, your Honor, that's it.

        THE COURT:  Mr. Osborne, are you aware?

        MR. OSBORNE:  No, your Honor.

        THE COURT:  All right.  In looking at Officer

Nguyen's addendums, it looks like there were several

01:39PM   unresolved objections, Objection Number 3, 4, 5, 6, 8,

9.  I may have left out one; but in any event, my

understanding is that given where we are at this point

and what Mr. Osborne has had a chance to review that the

defendant would now like to withdraw all of the

01:39PM   remaining unresolved objections; is that correct?

1        MR. OSBORNE:  That's correct, your Honor.

2        THE COURT:  So just to be sure I understand,

3    there are no objections that you believe the Court needs

4    to rule on at this time?

01:39PM    5        MR. OSBORNE:  That is correct, your Honor.

6        THE COURT:  All right.  That being the case,

7    the Court will adopt and approve the final presentence

8    report without revision.

9        Now having finalized the presentence report,

01:40PM   10    and having had the benefit of the contents of that

11    report, Mr. Chanthalangsy, I am now in a position to

12    give full and final approval to your plea agreement in

13    this case.  I do so based on a finding that the offense

14    of conviction here will adequately reflect the actual

01:40PM   15    seriousness of your conduct and behavior.

16        So bottom line, what that means is that the

17    sentence that the Court will impose at the end of this

18    hearing will be consistent with the plea agreement that

19    you and your attorney negotiated with the government.

01:40PM   20        So what I would like to cover from hereon out

21    would be as follows, sir.  First, I would like to

22    explain to you the various factors that the Court has

23    taken into consideration in determining what would be an

24    appropriate sentence for you in this case; then I am

01:41PM   25    going to ask the attorneys whether they have any

recommendations or argument as to what they contend

would be an appropriate sentence, given the relevant

factors; and then, before stating its sentence and the

reasons for it, I will give you an opportunity to make

any statement that you would like to make to the Court.

You're not obligated to make a statement, but I will

certainly give you that opportunity.

So with that said, let me explain how the

Court -- the process that it has used to evaluate what

would be an appropriate sentence. As always is the

case, it is a two-step process. In step one, the Court

is obligated to apply the sentencing -- federal

sentencing guidelines to your case. That results in the

calculation of what we call the guideline range

sentence, which simply means the sentence that, if you

crunch the numbers, in the view of the United States

Sentencing Commission, that range of punishment would be

appropriate for you.

Now, that range is merely advisory. This Court

is not obligated or bound to sentence you to a so-called

guideline range sentence, but it must take the guideline

range into consideration.

So after calculating that range, we move to

step two. Step two involves a consideration of numerous

other factors. These factors are set out at a place in

our code book known as Title 18 United States Code
Section 3553(a). That is simply the chapter and verse,
so to speak, of where we find these factors in our
statute book; but because of that, these factors
sometimes are nicknamed or, for short, referred to as
the "3553(a) factors."

Now, I will explain more to you about what
those factors are when we get to step two; but just so
that you understand the process, the idea is that we
calculate the guideline range and then the Court
considers, applies, and weighs other factors to
determine whether a sentence within the guideline range
is appropriate or not.

If, applying these other factors, the Court
believes that the guideline range is too harsh, then, as
your attorney is advocating for here, the Court has the
discretion to vary downward from the guideline range.

The opposite, however, is also true, that the
government's lawyer is advocating for. If the Court
were to determine that these other factors support
varying upward from the guideline range, because the
guideline range would be deemed to be not severe enough,
then the Court has that discretion as well, at least up
to the statutory maximum in this case. So that's how it
works, and let's begin at step one.

1           The guideline range, as you know, sir, is

2    actually calculated in quite a bit of detail within the

3    final presentence report, and for that reason I'm

4    technically just going to adopt and incorporate that

01:45PM   5    calculation by reference, but I do at least want to

6    summarize it for you.

7           To calculate the guideline range, the Court

8    needs to know two things.  The first one is what we call

9    the offense level, and the second thing is your criminal

01:45PM   10   history category.

11          With regard to the offense level, possession of

12   child pornography offenses have a starting point on the

13   offense level of 18; and then the applicable guideline

14   lists numerous potential enhancements that could apply

01:46PM   15   if certain things are present in how the offense was

16   committed, and it is not uncommon that many of those

17   enhancements apply, and here there are several.

18          First of all, you've been assessed a two-level

19   enhancement because the images of the child pornography

01:46PM   20   included images of children who had not yet attained the

21   age of 12.  There is a four-level enhancement that has

22   been applied as well because the images contained

23   conduct that was of a sadistic or masochistic nature.

24          You've also, merely because you were using a

01:47PM   25   computer to access these images, that fact alone is

another two-level enhancement; and as pertinent here, you've also been assessed with an enhancement based on the number of images that were attained based on the forensic examination of the devices involved.

01:47PM    According to the presentence report, there were over 38,000 images using the calculation protocol that is used and so the idea is that the more images, the more enhancement, and the maximum enhancement is five. That is triggered when there are 600. You have

01:47PM    obviously many, many more times than that, so you qualify for the maximum enhancement of five levels. If we do the math, that gets you up to 31 so far.

Other chapters of the guidelines provide for downward adjustments, and here the probation officer is

01:48PM    recommending that you receive a two-level downward adjustment because of your acceptance of responsibility; and pursuant to what is contemplated in your plea agreement, and if the government so moves, you can receive a third level.

01:48PM    Mr. Roberts?

MR. ROBERTS:  The government so moves, your Honor.

THE COURT:  That motion is granted and so you will, in fact, receive a total of three levels of

01:48PM    downward adjustment because of your acceptance of

1   responsibility.  So, again, doing the math, we're at a

2   28 on the offense level.

3           So we go to the second input, which is your

4   criminal history category.  That is all determined based

01:48PM   5   on your prior convictions and how many points that they

6   score.  That's an easy calculation in your case because

7   your criminal history scores zero points and so you are

8   placed in the lowest criminal history category.

9           So now that we know that you're an offense

01:49PM   10   level 28 and your criminal history category is a I, if

11   you think of the guideline range as a table, then we're

12   simply finding the intersection of those two inputs; and

13   at the intersection here, I can tell you that the

14   recommended, or what we say advisory range is as

01:49PM   15   follows:  To a period of incarceration of between 78 and

16   97 months with a term of supervised release to follow

17   which would range in length from five years and up to

18   the remainder of your life.  A fine is recommended to be

19   imposed in the range of $25,000 and up to as much as

01:50PM   20   $250,000.  There has been a claim of restitution

21   totaling, I believe, $72,500.  The guideline would

22   provide for mandatory restitution in an amount that the

23   Court finds to be appropriate.

24           There's also a special assessment that applies

01:50PM   25   in every kind of case for $100 and then there is another

quote/unquote mandatory special assessment that the
Court must impose in the sum of $5,000 in cases --
sexual cases involving children, and the only exception
to that is if the Court were to find that you're
indigent.  So that is the guideline range.  That is step
one.

We now move to step two.  These 3553(a) factors
that I alluded to a moment ago requires this Court,
first of all, to look at the totality of the
circumstances that surround your offense of conviction.
The Court must also -- and this is one of the reasons
why all these letters that have been submitted are so
important.  The Court must take into account your
personal history, your background and your
characteristics.

The Court is also instructed to look to these
sentences that have been imposed upon other defendants
who have been convicted of the same or substantially
similar offense and who have the same or substantially
similar criminal history.  The idea there is that the
Court should avoid any unwarranted differences in the
sentences that are imposed upon otherwise similar
defendants.

Finally, the Court is required to bear in mind
all of the purposes and objectives for why we punish

people convicted of federal offenses in the first place.

Here the idea is that the Court should craft and

custom-tailor a sentence for each defendant that comes

before it that is sufficient, but not greater than

01:52PM   5   necessary, to meet and achieve those goals and purposes.

Congress has said that in this custom-tailoring

approach that the final sentence that the Court comes up

with should reflect several things.  For example, a

sentence should reflect the seriousness of the offense,

01:53PM   10   a sentence should reflect and be in keeping with

imposing proper respect for the law, a sentence should

be just, a sentence should have a deterrent effect, and

a sentence should serve to protect the public from you

and any future crimes which you might otherwise commit.

01:53PM   15   So in looking at all of the materials that have

been submitted to the Court and which the Court has

reviewed, I have been mindful of those purposes of

sentencing alongside these other 3553(a) factors that I

have mentioned; and as I continue to keep an open mind

01:54PM   20   as to what would be the most appropriate sentence, I'm

now going to ask that the attorneys, understanding that

those are the factors that we have to look to, I'm going

to ask whether they have any particular recommendations

or argument they would like to make.

01:54PM   25   And, Mr. Roberts, I'll ask you to go first.

1         MR. ROBERTS:  Thank your Honor.

2         Your Honor, the government filed a motion for

3    an upward variance in this case asking for a sentence of

4    120 months.  I set out the reasons pretty, I think,

01:54PM  5    clearly in the sentencing memo, the punch line being

6    that this case should set a bar.

7         The offense conduct, although it is somewhat

8    sophisticated, we could argue where in the range that

9    should be.  The child pornography does depict minors.

01:54PM 10    We could argue where in the range that should be.

11         What truly stands out about this case, and I

12    just won't belabor the point -- it's quite obvious --

13    this defendant's a drug dealer.  We have, to my

14    knowledge, never had a case, at least that I presented,

01:55PM 15    or that I know about that's been presented, in which a

16    child pornography, run-of-the-mill -- or not

17    run-of-the-mill but, rather, online-based child

18    pornography, nonhands-on, no criminal history, was also

19    a drug dealer.

01:55PM 20         Because of that factor alone, I think this case

21    should set the bar.  There are aggravating factors

22    outside any case such as this that we presented.  The

23    case by itself on child pornography is arguably

24    comparable.  It's not substantially different than any

01:55PM 25    other online CP case that we present.  The only factor

1     here is that Mr. Chanthalangsy is a drug dealer.

2          That's all I have, your Honor.

3          THE COURT:  All right.  I did have one question

4     for you.  At one place in the presentence report, it

01:55PM  5     describes the images portraying victims ranging in age

6     from 1 to age 16 but then there are descriptions of

7     specific images that are all under, like, age 9.  Do you

8     have any more information available to you as to where

9     the focus or any predominant age group that was depicted

01:56PM  10    overall?

11         MR. ROBERTS:  Where the average fell?  No, your

12    Honor.  I wish I could represent that to the Court, but

13    off the top of my head, I do not.  I would note that

14    there is a baby, an infant's chat room, that we did find

01:56PM  15    and that was something that stood out to me.  But as far

16    as where the average age is, I don't have that to report

17    to the Court.

18         THE COURT:  So in other words, there are

19    several that are specifically identified -- as I said, I

01:56PM  20    think they are maybe 7 to 9 years old, something like

21    that.  Are those representative, or do these images

22    truly run from 1 all the way up to 16?

23         MR. ROBERTS:  Your Honor, when -- those

24    descriptions primarily come from when we're indicting

01:57PM  25    the case and we're looking at our charging decisions and

1    what we're going to present.  I don't necessarily ask

2    the forensic examiner to get the worst of the worst, but

3    we are looking for prepubescent minor -- or images

4    depicting prepubescent minors and that's why all of

01:57PM  5    those are described -- do describe prepubescent minors.

6              THE COURT:  All right.  Thank you, sir.

7              Mr. Osborne?

8              MR. OSBORNE:  Your Honor, this particular case,

9    as Mr. Roberts has suggested, does have a very unusual

01:57PM  10    twist with regard to the drugs that are involved.  This

11    starts out with a five-count indictment.  The first four

12    counts deal with drugs; the last count deals with the

13    possession of child pornography.

14              I would suggest to the Court, I'm going to

01:57PM  15    address first the child pornography issue and then try

16    to incorporate the drug analysis on the end.

17              Your Honor, with regard to the -- if this were

18    a standard child pornography case, it's my intention

19    that the Court would normally look at a Dorvee analysis

01:58PM  20    to some extent; and when you're looking at the Dorvee

21    analysis with respect to the presentence investigation

22    report, Paragraphs 43, 44, and 45, which give you a

23    combined enhancement of eight points, are normally

24    applicable in every single case.

01:58PM  25              I would concede in this particular case that

the number of images, which is 38,000, probably does

justify and probably -- I would suggest to the Court

that I could clearly understand why that particular

four-point enhancement might occur.  But under the

Dorvee analysis, the other three enhancements, which

increase the sentence by an additional eight points has

been under extreme criticism because it's based on the

congressional mandates, not based on empirical evidence

that the sentencing commission would use to try to

determine what is appropriate.

So under that analysis, your Honor, when I

requested the sentence at 33 months, that is looking at

the pornography case standing by its own; and then if

you knock down the eight points without adding the

additional -- excuse me -- which would include the

additional five, that would get him to a Level 20, which

would be 33 to 41 months.  That's where I was suggesting

the Court should look at this case.

I understand that this one -- and I've spoken

with Dustin too.  I've never seen these kind of facts

before, either.  So I can't tell the Court necessarily

how the Court should look at this or view this, but I

was trying to view this from the standpoint, what if all

five counts had been drug counts as opposed to four

counts of drugs and one count of child pornography.

1          I would submit to the Court that if the Court

2    was analyzing those particular facts, it would be

3    completely appropriate to look at the dismissed counts

4    when analyzing a range where to put this man with regard

02:00PM    5    to the range, but you normally wouldn't go outside of

6    that range based on those dismissed counts.  So --

7          THE COURT:  How would -- if the government --

8    if you and the government had presented a plea agreement

9    to the Court where you also pled to one of the drug

02:00PM    10   counts, how would that have impacted the resulting

11   guideline range?  Have you looked into that?

12         MR. OSBORNE:  I have not, your Honor.  That was

13   done before I got on board, so --

14         THE COURT:  I mean, it would obviously affect

02:00PM    15   the upper end of the statutory maximum --

16         MR. OSBORNE:  Right.

17         THE COURT:  -- but it doesn't necessarily mean

18   that it would impact the guideline range.

19         MR. OSBORNE:  I don't think it would -- well, I

02:01PM    20   don't know if Diem would have any input, but I don't

21   believe that --

22         THE COURT:  Well, I was just curious whether

23   you had -- you were making that argument, so I was just

24   curious whether you had done that.

02:01PM    25         MR. OSBORNE:  Yeah, I did not.

1          THE COURT:  Okay.

2          MR. OSBORNE:  Your Honor, these guidelines

3   completely ignore the technological advances, and that's

4   part of the Dorvee analysis that suggests that you can

02:01PM  5   have a computer in every case.

6          As the Court has already mentioned, there's

7   going to be a computer in almost every case.  These are

8   not Polaroid.  We have a kind of a Polaroid guideline --

9   well, excuse me, Polaroid congressional mandates, and

02:01PM  10  they ignore the technological advances.

11         The only -- once again, the only one that I

12  would suggest, it seems to be that somewhere around 2500

13  images may somewhat be a threshold to allow the

14  five-point enhancement; it clearly exceeds that.

02:02PM  15         Judge, I would ask the Court to consider it

16  under that analysis and allow it to be analyzed on the

17  count that he's pleading to with the reduction of these

18  point enhancements that the Court, I believe, would

19  normally deem inappropriate without the regard of the

02:02PM  20  congressional mandates.

21         Your Honor, with regard to the restitution, I

22  would ask the Court to allow that restitution figure for

23  the 7,000; and on behalf of my client, your Honor, he

24  has asked me to request that he be allowed to be

02:02PM  25  incarcerated in an SOMP facility which would offer the

1    SOTP program as well.  He has indicated to me he does

2    have a desire to change.  This is not like him.  This is

3    totally out of his character.

4        I would suggest to the Court, it's my

02:03PM    5    understanding the Court's received nine letters from

6    Hongkham, Vieng, Kim, Bounmee, Phet, Dora, Jason, and

7    Brittany; and the thing that I get out of all those

8    letters, your Honor, is that it surprised all of them.

9    They all said this is totally out of this man's

02:03PM    10    character.  They never saw anything like this coming,

11    and I would ask the Court to consider that when imposing

12    a sentence.

13        It's my suggestion to the Court when you have a

14    family support network that stands behind a person, his

02:03PM    15    likelihood of success when he gets out is going to be

16    completely different than somebody that doesn't have a

17    support network.

18        With regard to the fine, your Honor, I would

19    ask that it just be eliminated on the restitution.

02:03PM    20    Thank your Honor.

21        THE COURT:  All right.  Thank you very much,

22    Mr. Osborne.

23        Well, Mr. Chanthalangsy, would you like to make

24    a statement?

02:04PM    25        THE DEFENDANT:  No, I do not.

1          THE COURT:  All right.  Thank you, sir.

2          Well, sir, as I explained earlier, it is a

3    two-step process.  We end step one with a guideline

4    range of 78 to 97 months and then the Court is obligated

02:04PM  5    to consider these other factors under Section 3553(a).

6          In nonhands-on child pornography cases, I

7    always begin the 3553(a) analysis by explaining the

8    Court's views about the 2G2.2 guideline.  As this Court

9    has expressed on numerous occasions, this Court has a

02:05PM 10    policy disagreement with Section 2G2 for many of the

11    reasons expressed by Mr. Osborne.  The fact that these

12    enhancements are not empirically based but

13    congressionally mandated I think is, if not conclusively

14    established, is certainly often a cited criticism.

02:05PM 15          The Court also has a fundamental problem in

16    that with the passage of time and with the evolution of

17    technology, the enhancements have become outdated and

18    they tend to be applied in every case -- or many of them

19    tend to be applied in every case, just because of the

02:06PM 20    nature of the technology and the nature of the offense.

21          The Government prosecutes child pornography,

22    and the fact that there's another enhancement because

23    children are 12 years old, I mean, that seems to be

24    present in almost every case, and it is to the point

02:06PM 25    where the guideline no longer serves, nor is it capable

of being applied, to separate the garden variety or
vanilla-flavored offenses from the more serious or
aggravating ways in which the crime can be committed.
So that's why I have a policy disagreement with Section
2G2.2.

The bottom line is I think that many times, if
not almost every time, it leads to a guideline range at
the end of what I call step one that is artificially
inflated such that when the Court begins to apply its
3553(a) analysis, it's starting that from a point that
is much higher than it should be.

So the sentencing commission, back in 2012 --
and I believe Mr. Osborne referred to this study in his
sentencing memorandum -- enveloped these same criticisms
and made a proposal for a different rubric with which to
assess truly aggravating versus typical offense conduct
in these cases and so I have -- while that rubric
requires the Court -- or would suggest that a Court
should look at the circumstances that characterize the
offense based on three things.

First of all, the Court would look at the
content of the images, the Court would make findings
about whether there was involvement in an Internet-type
community where there was participation alongside other
offenders, and then the Court is to look to whether

there's any underlying history that's predatory in
nature or sexually abusive in their past.

And so I have applied that framework to the
facts of this case, and my purpose in doing so is to try
02:09PM to determine whether in this case the guideline range
enhancements overstate the seriousness of the particular
attributes in this case.

So as to content, there's a lot of content
here.  488 videos, 1600 still images.  You do the math.
02:09PM Total images is over 38,000.  So the Court finds that
very aggravating, and I think Mr. Osborne rightfully
concedes that that is an aggravating circumstance.

Also, Application Note 6(b)(ii) explains why,
when there are videos in an offender's collection that
02:10PM are particularly long, why that is kind of a tip-off as
to something that might be more aggravating than not.
The kind of line that they use is five minutes in
length, and there was at least one, perhaps two videos
noted here to be longer than five minutes.  One was
02:10PM longer -- as long as about 45 minutes, if I'm recalling
correctly.  So that's viewed as very aggravating as
well.

Types of conduct depicted, while true that most
of the time it involved sadistic and masochistic, and by
02:10PM that I mean penetration between an adult and a child,

1    it's not always the case, but it certainly was the case

2    here, so I would designate that as typical but certainly

3    not mitigating.

4         In terms of the ages, I think the general idea

02:11PM    5    is that if the collection involves children who are on

6    the younger end, if they're -- as opposed to closer to

7    16 that it's viewed as more aggravating the younger the

8    child victim.

9         In this case it appears to have run the gamut

02:11PM    10    between 1 and 16 years old, although there are certainly

11    representative samples involving children who are under

12    9 years of age, or approximately 9 years of age, and

13    that is certainly viewed as more aggravating than

14    typical.

02:12PM    15         There's no particular evidence that the

16    collection was organized per se, so that's viewed as a

17    little bit mitigating.  The defendant maintained this

18    collection for approximately three years.  I'd find that

19    to be typical.

02:12PM    20         As I will explain in a moment, the collection

21    was accessed through or perhaps protected by special

22    online protections and password technologies.  That's

23    viewed as a little bit more aggravating and

24    sophisticated.  So on balance, the content in this

02:12PM    25    particular case is certainly viewed more aggravating

1    than typical.

2           Item number two, participation in an Internet

3    community.  This Court frequently, but not in every

4    case, sees what we call peer-to-peer sharing networks

02:13PM    5    where that is the offender's source of pornography.

6    This involves passive distribution, and it involves an

7    open community.  That is viewed as more aggravating than

8    people who are not hooked up in a peer-to-peer format.

9           But the next step above that is whenever an

02:13PM    10    offender participates in a closed Internet community;

11    and what I mean by closed is that it's either

12    password-protected or you have to pay for access to the

13    images, and that was the case here.

14           Here Mr. Chanthalangsy was accessing this

02:13PM    15    pornography, at least in part, in what is known as the

16    dark web.  He was paying for access to images through

17    Bitcoin virtual currency.  The viewing was

18    password-protected and restricted.

19           It also involved access to chat rooms, where

02:14PM    20    other offenders lurked and posted content and presumably

21    had discussions.  And in these online forums such as he

22    was accessing, now, those are categorized; and whatever

23    one's perverted mind may desire to see, there's likely

24    to be a category for those sorts of interests or

02:15PM    25    fetishes.

1          The Court had an opportunity in another case,

2    United States versus Jean, in which there was a lengthy

3    opinion that informed the Court's knowledge about the

4    dark web and its uses and about how you go to these

02:15PM   5    different pages on these sites by category based on what

6    the fetish is.

7          The Court finds -- bottom line, the Court finds

8    the defendant's use of the dark web and Bitcoin to pay

9    for access to be very aggravating; but beyond that,

02:15PM   10   according to the presentence report, one of the

11   interested websites that Mr. Chanthalangsy had visited

12   involved child pornography that was dedicated to infants

13   and to babies, and the Court finds that particularly

14   sick.

02:16PM   15          The third category is the defendant's prior

16   history of abusive relationships.  The Court is not

17   aware of any such prior history and so it finds that

18   third category to be mitigating.

19          So the first thing, the content, that is more

02:16PM   20   aggravating than typical, I would say substantially so,

21   for the reasons that I have said.  The second thing is

22   was the participation in the Internet community.  The

23   answer is yes; and for the reasons that I have stated,

24   the facts here would suggest that the participation on

02:17PM   25   these facts is viewed as particularly aggravating.  And

1   then we have the third factor, which, there's no prior

2   abuse, and that is viewed as mitigating.

3          When you average all that out and weigh it out,

4   and compare that to the enhancements that have been

02:17PM  5   applied, if you take the 2G2.2 approach, the Court finds

6   that the total number of enhancements that the guideline

7   comes up with is certainly a fair characterization of

8   the enhancements that should apply over the baseline, or

9   typical sort of cases that we see, if not more.

02:17PM 10          So this may be the very first case where the

11  Court has not found a reason to grant a variance when it

12  compares the proposed rubric for looking at these cases

13  with the 2G2.2 analysis, but nevertheless, those are the

14  Court's findings.

02:18PM 15          So now let's look at some of the more

16  traditional and straightforward factors under 3553(a).

17  There are both additional aggravating factors, as well

18  as numerous mitigating factors.  First, sticking with

19  the child pornography, again, the Court here has

02:18PM 20  somewhat of a concern that the 2G2.2 analysis may very

21  well understate the seriousness of the offense conduct

22  here for the reasons that I have described, particularly

23  those reasons associated with the use of the dark web to

24  access these images and pay for it with Bitcoin currency

02:19PM 25  and that sort of thing.

1    But the circumstances that surround the offense

2  of conviction here also include drug distribution.  In

3  fact, the origin of the criminal investigation here

4  started out as an investigation into drug trafficking.

02:19PM   5  It seems that apparently unbeknownst to his family,

6  Mr. Chanthalangsy was a criminal on the dark web and

7  that his -- one of his main fortes was in acquiring

8  drugs and perhaps even selling drugs over the dark web.

9    We also know for sure that there were at least

02:20PM  10  two deliveries of methamphetamine that were made and

11  numerous illicit contraband drugs during the seizure at

12  his house, upon execution of the search warrant.

13    He was a drug dealer, and whether or not he

14  pled to that, whether or not that is an offense of

02:20PM  15  conviction, it is relevant conduct and it is part of the

16  circumstances that surround the offense of conviction;

17  and the Court views those circumstances, even though he

18  was not convicted of them, to be a very aggravating

19  fact.

02:21PM  20    Turning to the mitigating factors, there are

21  numerous mitigating factors.  I think the one that the

22  Court gives considerable weight to is the fact that

23  Mr. Chanthalangsy is a first-time offender.  He has zero

24  criminal history points.  And, where appropriate, the

02:21PM  25  Court believes that people with no prior criminal

history are deserving of a break and a second chance and

so that fact alone is entitled to significant weight in

a mitigating fashion.

As Mr. Osborne pointed out, the Court also

02:21PM  finds, and based on the letters that it has received,

that Mr. Chanthalangsy, beside for his criminal

activities committed in the dark, when he's out in the

daylight and around his family and his friends and at

his job, he's a very well-liked, respected person who

02:22PM  certainly is capable of being a productive member of

society.  He's certainly someone that is very well-loved

by his family.  He has lots of family support.

I agree with Mr. Osborne that all of that

should be combined, and we have to bear in mind that

02:22PM  Mr. Chanthalangsy should not be -- his entire life

should not be defined by this criminal activity that

brought him here before the Court and, as well,

considering the fact that he has lots of support not

only now but support that will be there when he gets out

02:22PM  from the Bureau of Prisons, and the Court does believe

that that is important in helping an offender go on to

lead an otherwise law-abiding life.

The Court also credits as mitigating that

Mr. Chanthalangsy came to this country as an immigrant

02:23PM  from Laos when he was 3 or 4 years old.  The conditions

1    and circumstances were very harsh and that he has

2    overcome much and that he has much to be proud of in how

3    he has succeeded prior to this setback in society here.

4    So all of that is viewed as mitigating.

02:23PM  5         What I think the bottom line here is there are

6    two parts to Mr. Chanthalangsy.  He had the part of him

7    that all of his friends, all of his family knew; and

8    then there were his activities on the dark web.

9         In the Court's opinion that I referenced

02:24PM  10   earlier, United States versus Jean, the Court went into

11   quite a bit of detail explaining what it had learned

12   during the course of that case about the dark web and

13   about the origins of the onion router and how that

14   actually started off as an alternative,

02:24PM  15   below-the-surface website.  It was actually started by

16   the United States naval service, and it was a government

17   operated, but then after a period of time, it kind of

18   became commandeered; and although there continued to

19   remain legitimate purposes of the dark web, it has been

02:24PM  20   overrun and now, without a doubt, its primary purpose is

21   to allow criminals to engage in criminal activity over

22   the Internet in complete anonymity, and it is a very

23   frightening thing when you realize everything that is

24   available out there.

02:25PM  25        There are literally resources where you can

1  pull up a menu and order whatever drug you want.

2  Whether that be to consume, whether that be to purchase

3  and sell, it is a very scary thing.  It is also the

4  primary source where very sick people go to view child

02:25PM  5  pornography, the sort of child pornography that is not

6  perverse enough to view on the surface level, though.

7          So all manner of criminal activity is committed

8  on the dark web, and any actor that is going there and

9  has the sophistication of this Bitcoin technology that

02:25PM  10  was seized from Mr. Chanthalangsy is just kind of

11  amazing in this Court's estimation.  How he could be

12  doing that and having that sort of level of

13  sophistication, engaging in this type of criminal

14  conduct and his family, many of whom are here today,

02:26PM  15  just would have no idea of it, the Court finds all of

16  that interesting and amazing and unfortunate.

17          So for all of those reasons, Mr. Osborne, the

18  Court is going to have to deny your motion for a

19  downward variance.  However, Mr. Roberts, given that

02:26PM  20  Mr. Chanthalangsy is a first-time offender and given

21  that the guideline range does go up to as high as 97

22  months, the Court is likewise going to deny your motion

23  for an upward variance.  The Court believes that the

24  upper end of the guideline range is the best and most

02:27PM  25  appropriate sentence for Mr. Chanthalangsy.

1    Having made that review of the 3553(a) factors,

2  Mr. Chanthalangsy, the Court will impose judgment as

3  follows:  Sir, it is the judgment of this Court that you

4  are to be committed to the custody of the United States

02:27PM  5  Bureau of Prisons for a term of 92 months on Count Five

6  of the indictment.  The Court will recommend to the

7  Bureau of Prisons that Mr. Chanthalangsy be designated

8  to a facility nearest his family here in Northwest

9  Arkansas.

02:28PM  10    The Court will also make a recommendation to

11  the Bureau of Prisons that at an appropriate point

12  during Mr. Chanthalangsy's stay that he be designated to

13  a Bureau of Prisons facility that offers sex offender

14  treatment treatment, program and treatment.  There's

02:28PM  15  kind of a particular point during their stay and

16  depending on how close they are to discharge whenever

17  they do that; but whatever the appropriate point in time

18  is, the Court certainly feels that that would be

19  appropriate.

02:28PM  20    Upon release from imprisonment, the defendant

21  shall be placed on supervised release for a period of 15

22  years.  Within 72 hours of release from custody of the

23  Bureau of Prisons, the defendant shall report in person

24  to the probation office in the district to which the

02:29PM  25  defendant is released.  While on supervised release, the

1  defendant shall not commit any federal, state, or local

2  crimes.  He shall be prohibited from possessing a

3  firearm or other dangerous device.  He shall not possess

4  a controlled substance, and he shall comply with the

02:29PM  5  mandatory drug testing provisions and DNA collection

6  provisions found at Title 18 United States Code Section

7  3583(d).

8          The defendant shall comply with all applicable

9  local, state, and federal sex offender registration

02:29PM  10  requirements.  The defendant shall further comply with

11  all the standard conditions of supervised release.

12  Those were set forth, sir, in your plea agreement; they

13  will be restated in your judgment and commitment

14  paperwork.

02:29PM  15          In addition, the defendant shall comply with

16  the following special conditions.  Number one, if deemed

17  necessary, the defendant shall submit to any means then

18  utilized by the United States Probation Office to track

19  his whereabouts or location at any time.  Number two,

02:30PM  20  the defendant shall have no unsupervised contact with

21  minors.  Number three, the defendant shall submit his

22  person, residence, place of employment, vehicle, papers,

23  computer, or other electronic communication or data

24  storage devices or media or effects of any related kind

02:30PM  25  to a search to be conducted by the United States

Probation Office at any reasonable time and in any
reasonable manner based on any reasonable suspicion that
a violation of any condition of supervised release might
thereby be disclosed.

02:30PM  Number four, except for purposes of employment,
the defendant shall not possess, use, or have access to
a computer or any other type of electronic device that
has Internet or photographic storage capabilities
without the prior and advance notice and approval of the
02:31PM United States Probation Office.

Reasonable requests by the defendant for such
approval ordinarily should not be denied, provided that
the defendant allows the U.S. probation office to
install Internet monitoring software, that the defendant
02:31PM pays for that software, and that the defendant
additionally submits to random searches of his computers
and electronic devices and peripherals by the probation
office.

Number five, the defendant shall submit to
02:31PM inpatient or outpatient mental health evaluation,
counseling, testing and/or treatment, all with an
emphasis on sex offender treatment as may be deemed
necessary and as directed by the United States Probation
Office.

02:31PM With regard to restitution, the Court has

reviewed the restitution claims of the victims that have

been submitted by their attorneys.  Restitution is

mandatory in these types of cases.  The Court believes

that in determining an appropriate amount for

02:32PM  restitution, that while that is often difficult to

ascertain, the Court finds that here the parties have

agreed that restitution in the amount of $1,000 per

victim would be appropriate; and based on the Court's

review of the materials and information submitted by the

02:32PM  victims' attorneys, the Court believes that that amount

of restitution is reasonable and so the Court will award

restitution to each of the seven victims identified in

the presentence report.  That's $1,000 each for the

seven victims.  In arriving at that decision, the Court

02:32PM  has taken into account the Paroline factors.

With regard to a fine, and in recognition of

the restitution obligation here, the Court finds that

the defendant does not have the ability to pay a

guideline range fine, and the Court would prefer that

02:33PM  monetary obligations be paid in the form of restitution

anyway, so no fine is going to be imposed.

A special assessment in the sum of $100 is

required and that will be assessed.  The $5,000 special

assessment under Title 18 U.S. Code Section 3014 is

02:33PM  mandatory, but here the Court finds that the defendant

is indigent and so that assessment will not be imposed.

So, sir, you have a total of $7100 worth of financial obligations. Those are technically due and payable immediately; but to the extent that you cannot afford to make payment in full up front, then you are required to make payments as follows: If not paid immediately, any unpaid financial penalties shall be paid by the defendant during his term of imprisonment at a rate of up to 50 percent of the defendant's available funds, in accordance with the Bureau of Prisons Inmate Financial Responsibility Program.

During any period of residential reentry placement, those payments shall be equal to 10 percent of the defendant's gross monthly income. Then the payment of any remaining balance shall become a condition of supervised release and shall be paid in monthly installments of $250, or 15 percent of the defendant's net monthly household income, whichever is greater, with the entire balance to be paid in full not later than one month prior to the end of the period of supervised release.

Mr. Osborne, are you aware of any legal reason why the sentence should not be imposed as stated?

MR. OSBORNE: No, your Honor.

THE COURT: Mr. Roberts?

1    MR. ROBERTS:  No, your Honor.  Thank the Court

2 for accepting our agreement.

3    THE COURT:  That's fine.

4    Very well.  The sentence will be imposed as

02:35PM    5 stated.  Mr. Roberts, what about the remaining counts of

6 the indictment?

7    MR. ROBERTS:  The government would move to

8 dismiss the remaining counts, your Honor.

9    THE COURT:  All right.  That motion will be

02:35PM    10 granted.  Counts, I believe it's One, Two, Three, and

11 Four will be dismissed.

12    The Court has previously entered a preliminary

13 order of forfeiture that relates to various

14 electronic -- I'm not sure how to characterize these.

02:35PM    15 They are stated in the preliminary order and the final

16 order involves the computers and access to the Internet

17 in terms of using the Bitcoin currency.  Those devices

18 are the subject of the preliminary forfeiture.  The

19 Court finds the form of the final order of forfeiture to

02:36PM    20 be appropriate and that all the prerequisites to the

21 entry of this order have been met and, therefore, the

22 Court will enter the final order at this time and ask

23 the clerk to publish it to the docket.

24    Mr. Chanthalangsy, the last thing that I need

02:36PM    25 to cover with you are your appeal rights.  You do have

the right to appeal your underlying conviction in this case but really only on the fairly narrow grounds where you might contend that your guilty plea was somehow involuntary or the byproduct of a fundamental defect in the proceedings.  You do, however, obviously have the right to appeal the sentence that the Court just imposed.  The real takeaway message for you is that regardless of why or on what basis you may seek to appeal, there is a time limit for doing so.  The time limit is 14 days.  That begins to run on the date that the Court files the judgment in your case to the docket.

There's a filing fee that goes along with that, but the Court can waive the filing fee if you cannot afford to pay it.  You also have the right to be represented by counsel on appeal, and if you cannot afford to retain an attorney for that purpose, the Court will appoint an attorney to represent you on appeal.

Now, I know that Mr. Osborne will visit with you further about appeal issues, but I want to make sure that before you leave here today that you at least understand your basic appeal rights as I've just explained them.  Do you?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Very well.  Upon conclusion of this hearing, Mr. Chanthalangsy will be

1    remanded to the custody of the United States Marshals

2    Service pending designation and transfer to Bureau of

3    Prisons.  Is there anything further today from the

4    government?

02:37PM 5            MR. ROBERTS:  No, your Honor.  Thank you.

6            THE COURT:  Mr. Osborne?

7            MR. OSBORNE:  No, your Honor.

8            THE COURT:  All right.  We're adjourned.  Thank

9    you.

02:38PM 10           (Proceedings adjourned at 2:37 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              CERTIFICATE OF OFFICIAL REPORTER

2

3        I, Dana Hayden, Federal Official Realtime Court

4   Reporter, in and for the United States District Court

5   for the Western District of Arkansas, do hereby certify

6   that pursuant to Section 753, Title 28, United States

7   Code that the foregoing is a true and correct transcript

8   of the stenographically reported proceedings held in the

9   above-entitled matter and that the transcript page

10  format is in conformance with the regulations of the

11  Judicial Conference of the United States.

12          Dated this 16th day of February 2018.

13

14

15

16   _Dana Hayden_____

17          Dana Hayden, CCR, RMR, CRR
            Federal Official Court Reporter

18

19

20

21

22

23

24

25