```
 1                  UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF ARKANSAS
 2                      FAYETTEVILLE DIVISION
                                       )
 3   UNITED STATES OF AMERICA,         )
                                       )
 4        Plaintiff,                   )
                                       )
 5   VS.                               )  CASE NO. 5:17-CR-50027
                                       )
 6   CHANTHALANGSY PENG,               )
                                       )
 7        Defendant.                   )

 8
                  TRANSCRIPT OF CHANGE OF PLEA HEARING
 9             BEFORE THE HONORABLE TIMOTHY L. BROOKS
                    August 1, 2017; 10:35 a.m.
10                     FAYETTEVILLE, ARKANSAS

11
     FOR THE GOVERNMENT:
12
          Mr. Dustin S. Roberts
13        U.S. Attorney's Office
          414 Parker Avenue
14        P.O. Box 1524
          Fort Smith, AR 72902
15        479-783-5125
          Dustin.Roberts@usdoj.gov
16

17   FOR THE DEFENDANT:

18        Mr. Jack Schisler
          Assistant Federal Public Defender
19        3739 N Steele Blvd, Ste 280
          Fayetteville Arkansas  72703
20        (479) 442-2306

21
     Proceedings recorded in realtime via machine shorthand.
22   _____

23             Dana Hayden, CCR, RMR, CRR
             Federal Official Court Reporter
24              35 East Mountain Street
             Fayetteville, Arkansas 72701

25
```

1    THE COURT:  The next matter to come before the

2    Court today is the case of the United States versus Peng

3    Chanthalangsy.  Our case number is 5:17-CR-500027,

4    defendant number 1.  Dustin Roberts appears on behalf of

10:35AM    5    the United States.  Jack Schisler is here representing

6    Mr. Chanthalangsy.  The Court's probation officer Diem

7    Nguyen is present as well.  She will be doing the

8    presentence investigation in this case.

9    Good morning, Mr. Chanthalangsy.

10:35AM    10    THE DEFENDANT:  Morning.

11    THE COURT:  Sir, do I understand correctly that

12    you would like to change your plea in this case as it

13    relates to Count Five of the indictment which has been

14    brought against you in this case?  Count Five charges

10:35AM    15    you with possession of child pornography, in violation

16    of federal law.  Are you wanting to enter a guilty plea

17    to that charge?

18    THE DEFENDANT:  Yes, your Honor.

19    THE COURT:  All right.  Well, before I can

10:36AM    20    determine whether it would be appropriate to allow you

21    to do that or not, I have to consider many different

22    things.  For example, I need to make sure that you are

23    competent today to enter a guilty plea; I need to make

24    sure you've had proper representation of counsel; I need

10:36AM    25    to make sure that you understand the rights that you

would be giving up if you entered a guilty plea; I need
to make sure you understand the nature of this charge,
as well as the consequences that you would be facing if
you entered a guilty plea; I need to make sure that you
admit to all of the facts that make you guilty of this
charge; and ultimately I must ensure that any guilty
plea you are to offer today was given in both a knowing
and voluntary manner.

So that's a lot of territory to cover. We will
do that by me asking you a series of questions and you
providing your answers verbally to me. I will require
that your answers be given under oath; but before I
place you under oath this morning, I want to review with
you the ground rules.

Number one, should you provide a false answer
to any of my questions today, that could in and of
itself potentially subject you to separate charges of
making false statements or perjury. Do you understand
that?

THE DEFENDANT: Yes.

THE COURT: Secondly, it is important that you
only answer questions today that you understand. A lot
of my questions will be informing you about certain
rights that you have and asking whether you understand
that you have that right or that you're forgoing that

right, as the case may be; and what's important is that
if you don't understand one of my questions or you don't
understand a point that I'm trying to confirm that you
understand, then just tell me you don't understand it,
and I will be more than happy to repeat it or rephrase
it, give a further explanation or whatever else might
need to be done so that you're understanding and we're
tracking.  Is that agreeable?

THE DEFENDANT:  Yes.

THE COURT:  Now, Mr. Schisler has been
representing you throughout these proceedings; is that
correct?

THE DEFENDANT:  Yes.

THE COURT:  Has Mr. Schisler made himself
available to you to consult with and confer with?

THE DEFENDANT:  Yes.

THE COURT:  Are you fully satisfied with all of
Mr. Schisler's legal services and representation of you
in this case?

THE DEFENDANT:  Yes.

THE COURT:  At this time let me also tell you
that should you desire to confer with Mr. Schisler
throughout this proceeding or at any point during the
proceeding, I'll give you permission to do that.  Just
let me know that you would like to visit with him and

1    then we'll pause while the two of you confer privately.

2    Is that agreeable as well?

3                    THE DEFENDANT:  Yes.

4                    THE COURT:  All right.  Those are our three

10:39AM   5    ground rules.  If you'd please stand to raise your right

6    hand to be sworn.

7                    (Whereupon, the defendant was duly sworn.)

8                    THE COURT:  All right.  If you would, kind of

9    pull that microphone just a little bit closer to you.

10:39AM  10    We're going to start with some background questions.

11    Will you please state your full name.

12                    THE DEFENDANT:  Peng Chanthalangsy.

13                    THE COURT:  How old are you?

14                    THE DEFENDANT:  I am 37 years old.

10:40AM  15                    THE COURT:  Prior to your arrest, where did you

16    live?

17                    THE DEFENDANT:  At 4007 West Olive Street in

18    Rogers.

19                    THE COURT:  Are you married?

10:40AM  20                    THE DEFENDANT:  No.

21                    THE COURT:  Do you have any children?

22                    THE DEFENDANT:  Yes, sir.

23                    THE COURT:  How many and what are their ages?

24                    THE DEFENDANT:  I have a daughter.  She's 5

10:40AM  25    years old, I believe.

1        THE COURT:  How far did you go in school?

2        THE DEFENDANT:  I've got my GED and went

3   through some college.

4        THE COURT:  In terms of grade school, how far

10:40AM   5   did you go in grade school?

6        THE DEFENDANT:  I went to eleventh grade and

7   then I got my GED there.

8        THE COURT:  All right.  And you mentioned

9   college.  Where did you take college courses?

10:40AM   10        THE DEFENDANT:  At NWACC.

11        THE COURT:  What were you studying there?

12        THE DEFENDANT:  Computer science.

13        THE COURT:  Prior to your arrest, tell me about

14   the different types of employments or occupations that

10:41AM   15   you were engaged in going back three years.

16        THE DEFENDANT:  I started taking some

17   photography.

18        THE COURT:  Do you consider yourself to be in

19   good physical health today?

10:41AM   20        THE DEFENDANT:  Yes.

21        THE COURT:  Do you take any prescription

22   medications?

23        THE DEFENDANT:  No.

24        THE COURT:  Have you in the last 24 hours

10:41AM   25   consumed any medications, drugs, alcohol, or any

1 substance that would impair your ability to understand

2 what's going on in the courtroom today?

3          THE DEFENDANT:  No.

4          THE COURT:  Have you ever been treated by a

10:41AM  5 doctor for a mental health condition?

6          THE DEFENDANT:  No.

7          THE COURT:  And do you, in fact, understand,

8 sir, that this hearing has been set so that the Court

9 could consider your request to enter a guilty plea to

10:42AM 10 Count Five?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Mr. Chanthalangsy, we're starting

13 down this path, the end of which you'll be asked how

14 you'd like to plea; and if you change your plea to

10:42AM 15 guilty, then that's it.  You will have -- if I accept

16 your plea at that time, you will have forgone your right

17 to go to trial; and not only that, you will have forgone

18 your right to all of the rights and protections that go

19 along with a trial.  Do you understand that?

10:42AM 20          THE DEFENDANT:  Yes.

21          THE COURT:  Let me explain what some of those

22 rights are.  If you opted not to plead guilty and,

23 instead, go to trial, you would have the right to have a

24 jury consider all of the evidence and decide whether you

10:43AM 25 were guilty or not guilty.

1        At a trial you'd have the right to have an

2   attorney represent you.

3        At a trial you would have the right to see,

4   hear, and cross-examine any witnesses that the

10:43AM  5   government might call to testify against you.

6        At a trial you and your attorney would have the

7   right to use the Court's subpoena power to compel the

8   attendance of any witnesses that you might like to call

9   at trial.

10:43AM  10       At a trial, the burden of proof would be on the

11  government to establish beyond a reasonable doubt each

12  and every element of each charge that has been brought

13  against you; in other words, it would not be up to you

14  to prove that you were innocent but, rather, the burden

10:44AM  15  of proof would remain on the government throughout the

16  trial.

17       So those are some rights and protections that

18  you would have if the case proceeded to a trial; but if

19  you opt for a guilty plea, you are waiving and forgoing

10:44AM  20  not only your right to a trial but all of these rights

21  and protections that I've just explained.  Do you

22  understand that?

23       THE DEFENDANT:  Yes.

24       THE COURT:  There are two more differences

10:44AM  25  between, procedurally and substantively, how things work

1    if you opt for a trial versus how things work if you opt

2    for a guilty plea.  The first has to do with your Fifth

3    Amendment rights.

4         Now, at trial you could assert your Fifth

10:45AM    5    Amendment right and not testify.  The government cannot

6    force you at any trial to provide testimony against

7    yourself.

8         Now, the decision to whether you testify or not

9    is totally up to you; and if you wanted to testify in

10:45AM    10   your own defense, you could waive your Fifth Amendment

11   right and you could testify, but the point is no one is

12   going to make you testify if you opted for a trial.

13        It doesn't work exactly that way, though, if

14   you plead guilty.  As I mentioned earlier, before I will

10:45AM    15   accept your guilty plea, I'm going to require that you

16   admit to the facts that make you guilty, at least with

17   respect to Count Five of the indictment and the

18   possession of child pornography.  So to that extent, you

19   will be required to waive your Fifth Amendment rights in

10:46AM    20   order to plead guilty.  Do you understand that?

21        THE DEFENDANT:  Yes.

22        THE COURT:  One more difference.  This has to

23   do with how things work on appeal.  If you opted for a

24   trial and a jury found you guilty, you have an automatic

10:46AM    25   right to appeal a jury's finding of guilt to the United

States court of appeals; and on an appeal following a trial, you could contend that the jury got it wrong and that you were not guilty or that there was not sufficient evidence presented from which a reasonable jury could have or should have found you guilty, but it doesn't work that way if you plead guilty.

Remember that before this is over, you're going to have to admit to the facts that make you guilty; and because of that, on appeal -- and even though you would have the right to appeal, for example, the sentence that the Court ultimately imposes, but if you plead guilty and you take an appeal, you cannot argue on appeal that you are factually not guilty. Do you understand that distinction?

THE DEFENDANT: Yes.

THE COURT: Mr. Chanthalangsy, the indictment in this case charges you with five counts, or five crimes. Four of those have to do with the distribution of methamphetamine; but Count Five, the one you're proposing to plead guilty, charges you with possession of child pornography, in violation of federal law. Do you understand that that is the charge that you're proposing to plead guilty to?

THE DEFENDANT: Yes.

THE COURT: And do you understand -- well, let

me ask you this:  Have you had a full, fair, and

complete opportunity to confer with Mr. Schisler about

the nature of this charge in Count Five and what the

government would have to show in order to obtain a

10:48AM    conviction?

THE DEFENDANT:  Not really.

THE COURT:  All right, sir.  Would you like to

take some time to confer with Mr. Schisler -- and the

question on the table, before we recess for a moment, is

10:49AM    I want to be sure that you understand the nature of the

charge in Count Five -- this is the charge of possession

of child pornography -- and I want to be sure that you

understand the nature of that charge in terms of what

the government would have to prove at trial in order to

10:49AM    sustain and meet their burden of proof.

So we're going to take about five-minute

recess, or as long, actually, Mr. Schisler, as you need,

and just let us know when you're ready.

MR. SCHISLER:  Yes, your Honor.

10:49AM    THE COURT:  We're in recess.

(Recess from 10:49 a.m. to 11:00 a.m.)

THE COURT:  All right.  On a recess,

Mr. Chanthalangsy, have you had a chance to --

I'm sorry, Mr. Schisler.  Would you like to

11:00AM    report something?

1      MR. SCHISLER:  I was just going to say we're

2  ready to proceed with the plea.

3      THE COURT:  All right.

4      During the recess, Mr. Chanthalangsy, did you

11:00AM  5  have a chance to confer to your satisfaction with

6  Mr. Schisler?

7      THE DEFENDANT:  Yes.

8      THE COURT:  The line of questions that I had

9  for you had to do with whether or not you understood --

11:01AM 10  or understand the nature of the charge that you're

11  proposing to plead guilty to.  Let me back up a step and

12  ask you whether you have had an opportunity to review a

13  copy of the indictment that has been brought against you

14  in this case.

11:01AM 15      THE DEFENDANT:  Yes, I have.

16      THE COURT:  And do you understand that Count

17  Five charges you with possession of child pornography?

18      THE DEFENDANT:  Yes.

19      THE COURT:  And have you had an adequate amount

11:01AM 20  of time to confer with Mr. Schisler about the nature of

21  this charge of possession of child pornography?

22      THE DEFENDANT:  Yes.

23      THE COURT:  And do you, in fact, understand,

24  having conferred with Mr. Schisler, what all the

11:01AM 25  government would have to show at trial in terms of

1  evidence that they put on in order to sustain a finding
2  of guilt in this case?
3          THE DEFENDANT:  Yes.
4          THE COURT:  Have you, Mr. Schisler, reviewed
11:02AM 5  the indictment with Mr. Chanthalangsy and explained the
6  nature of the charges and, in particular, the nature of
7  the charge in Count Five, as well as explained to him
8  the potential consequences he would be facing should he
9  plead guilty?
11:02AM 10         MR. SCHISLER:  I have done that.  I did that
11  during recess, and I've done it on numerous occasions in
12  the past in connection with my representation of
13  Mr. Chanthalangsy in the case.
14         THE COURT:  And have you answered any and all
11:02AM 15 questions that he may have had about the nature of the
16  charge in this Count Five and the consequences of
17  pleading guilty to it?
18         MR. SCHISLER:  I have, your Honor.
19         THE COURT:  All right.  Let's talk about those
11:02AM 20 consequences, Mr. Chanthalangsy.  The maximum possible
21  penalty that you could receive for a conviction on the
22  offense of possession of child pornography is as
23  follows:  A maximum term of imprisonment of up to 20
24  years, a maximum fine of up to $250,000, the possibility
11:03AM 25 of both imprisonment and a fine, a term of supervised

1    release for between five years and up to the rest of

2    your life, special assessment in the sum of $100, a

3    special assessment in these types of cases for the

4    additional sum of $5,000 unless it is established that

11:03AM   5    you were indigent, and any restitution as may be found

6    ordered by the Court.

7          Do you understand that each and every one of

8    the punishments that I just listed are what you are

9    potentially facing should I accept your guilty plea

11:03AM  10    today?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Let me say one more word about

13    supervised release.  This is a period of time that will

14    follow your release from formal incarceration.  During

11:04AM  15    that period of time, you will be supervised by a

16    probation officer.  They are supervising you for your

17    compliance with certain terms and conditions of

18    supervised release.

19          Should it be determined in this Court that you

11:04AM  20    are in violation of a condition of supervised release,

21    it is at least possible that as a consequence, you could

22    be sent back to the Bureau of Prisons for yet further

23    incarceration.  Do you understand that?

24          THE DEFENDANT:  Yes.

11:04AM  25          THE COURT:  Do you understand that the crime

1    that you are proposing to plead guilty to is a sex

2    offense which would require you to comply with all

3    local, state, and federal sex offender registration

4    requirements?

11:05AM  5              THE DEFENDANT:  Yes.

6              THE COURT:  Sir, do you understand that the

7    offense that you're proposing to plead guilty to is a

8    felony?

9              THE DEFENDANT:  Yes.

11:05AM  10             THE COURT:  Do you understand that -- well, let

11   me ask you this:  Are you a citizen of the United

12   States?

13             THE DEFENDANT:  No.

14             THE COURT:  Ordinarily noncitizens of the

11:05AM  15   United States who are convicted felons are deported from

16   this country upon fulfilling the terms of a sentence.

17   Do you understand that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Mr. Roberts or Mr. Schisler, do you

11:05AM  20   know whether Laos is one of those countries where

21   deportation is likely or not likely?

22             MR. ROBERTS:  Your Honor, I think it's likely

23   in this case.

24             MR. SCHISLER:  Your Honor, I don't know one way

11:06AM  25   or another, but I've advised him of the deportation

1    consequences as set out in the plea agreement.

2            THE COURT:  All right.  Thank you.

3            So, sir, do you understand that there is a

4    certain likelihood, or at least a certain very real

11:06AM    5    possibility, that upon the completion of any term of

6    imprisonment that you could be deported back to your

7    home country of Laos?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Mr. Chanthalangsy, has anyone

11:06AM   10    forced you in any way to plead guilty?

11            THE DEFENDANT:  No.

12            THE COURT:  Has anyone made any threats to you,

13    a member of your family, or some other loved one that

14    some harm is going to come to you or to them if you

11:06AM   15    don't plead guilty?

16            (Off-the-record discussion between defendant

17    and counsel.)

18            THE DEFENDANT:  No.

19            THE COURT:  All right.  Mr. Chanthalangsy, you

11:07AM   20    paused there.  I want to make sure we're communicating

21    here.

22            One of my objectives here today is to make sure

23    that any guilty plea to this offense is given

24    voluntarily and so if someone has made a threat against

11:07AM   25    you or a threat against someone that you care about and

1    that's the reason that you're pleading guilty, then that

2    would be a concern to me and so that's the reason that

3    I'm asking.

4              Has anyone made any threats to you that is

11:07AM    5    causing you to want to plead guilty?

6              THE DEFENDANT:  No.

7              THE COURT:  Has anyone made any threats to a

8    loved one of yours that is causing you to want to plead

9    guilty?

11:08AM    10             THE DEFENDANT:  No.

11             THE COURT:  Is the reason that you desire to

12   plead guilty because you're guilty and for no other

13   reason?

14             THE DEFENDANT:  Yes.

11:08AM    15             THE COURT:  Do I understand correctly that the

16   parties have now entered into what is a fully executed

17   written plea agreement?

18             MR. ROBERTS:  Yes, your Honor.

19             MR. SCHISLER:  Yes, your Honor.

11:08AM    20             THE COURT:  The original has been tendered to

21   the Court.  I'd ask that a copy be given to

22   Mr. Chanthalangsy.

23             And Mr. Chanthalangsy, I would ask that you

24   turn over to the very last page, which is Page 15.  Is

11:08AM    25   that your signature under the date of July 21st?

1        THE DEFENDANT:  Yes, your Honor.

2        THE COURT:  Did you read this plea agreement in

3   its entirety before you signed it?

4        THE DEFENDANT:  Yes.

11:09AM  5        THE COURT:  Did you have a full and complete

6   opportunity to confer with Mr. Schisler about the terms

7   of this plea agreement before you signed it?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Did he explain it to you and answer

11:09AM 10  any and all questions you may have had?

11       THE DEFENDANT:  Yes.

12       THE COURT:  Mr. Chanthalangsy, I want to be

13  sure you understand something about this plea agreement.

14  Number one, it is contemplated that if the Court accepts

11:09AM 15  your guilty plea today and we get to the sentencing

16  hearing and the Court approves this plea agreement, then

17  one positive consequence of that from your perspective

18  would be that pursuant to this agreement, the Court

19  would dismiss the drug counts that are set forth in

11:10AM 20  Counts One through Four.  Do you understand that?

21       THE DEFENDANT:  Yes.

22       THE COURT:  And following sentencing, if the

23  Court does approve the plea agreement, then that is, in

24  fact, what will happen.

11:10AM 25       There are other places in this plea agreement,

however, where the government has told you that they are

going to make certain recommendations to the Court at

sentencing; and I will certainly listen and earnestly

consider any recommendations that the government might

11:10AM    make, but I want to be clear that you understand that

just because the government has agreed in this plea

agreement to make a recommendation does not mean that

this Court is bound or obligated to go along with the

government's recommendation.  Do you understand that?

11:11AM    THE DEFENDANT:  Yes.

THE COURT:  So in other words, despite any

particular provision in this plea agreement, the Court

retains the authority and discretion to sentence you to

any lawful sentence up to the statutory maximums that we

11:11AM    discussed a few moments ago.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Mr. Chanthalangsy, there is a

certain finality that goes along with pleading guilty

today.  If we get to the end of this hearing and you

11:11AM    plead guilty, then you will be convicted of the charge

in Count Five at that point in time.  You have no

automatic right to change your mind and come back,

whether it be tomorrow or next week or next month, and

seek to withdraw your guilty plea.  Do you understand

11:12AM    that?

1      THE DEFENDANT:  Yes.

2      THE COURT:  And most certainly after the

3  sentencing hearing, if for some reason you don't like

4  the Court's sentence, you can't withdraw your guilty

11:12AM   5  plea just because you don't like the Court's sentence.

6  Do you understand that?

7      THE DEFENDANT:  Yes.

8      THE COURT:  Has anyone made any promise to you

9  that this Court is going to give you any particular

11:12AM  10  sentence?

11      THE DEFENDANT:  No.  No.

12      THE COURT:  Has Mr. Schisler explained the

13  United States sentencing guidelines to you?

14      THE DEFENDANT:  Yes.

11:12AM  15      THE COURT:  It is true that the Court is

16  required to apply the sentencing guidelines to the facts

17  of your case and to calculate what we call the guideline

18  range of punishment and to take that guideline range of

19  punishment into consideration as one sentencing factor;

11:13AM  20  but that does not mean that the Court is obligated to

21  give you a so-called guideline range sentence.  Do you

22  understand that?

23      THE DEFENDANT:  Yes.

24      THE COURT:  The reason that that's true is that

11:13AM  25  the guideline range is merely one among many other

factors.

For example, the Court is also required to look at the totality of the circumstances that surround the offense of conviction, as well as to consider your personal history, background and characteristics; to consider the sentences that have been imposed upon other defendants who have been convicted of the same or similar crime and who have the same or similar criminal history; and the Court is also obligated to consider the objectives and purposes for which we sentence people and to craft a sentence that the Court believes is best suited to achieving those purposes and goals.

So there are many factors other than simply looking at the guideline range; and when these other factors are taken into consideration, it could be that the Court believes that the guideline range is too harsh, and it could be that because of that that the Court sentences you to something that is less than the guideline range.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Of course, the opposite is also potentially true.  If -- after considering all of these other sentencing factors, it is at least possible that the Court could impose a sentence that is more severe, which is to say more harsh than the guideline range.  Do

1   you understand that as well?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Mr. Chanthalangsy, if I accept your

4   guilty plea today, we will then enter a phase of these

11:15AM   5   proceedings known as the presentence investigation.

6   Officer Nguyen is the person likely to be conducting

7   that investigation.  She'll collect information from the

8   government, she'll collect information from you and your

9   attorney, she will collect and verify information from a

11:15AM  10   variety of independent sources; and when she's completed

11   her investigation, she will reduce that to a written

12   document known as the presentence report.

13           Once that report has been finalized in the

14   sense that everyone's had a chance to look at it,

11:16AM  15   everyone's had a chance to make objections and any

16   unresolved objections have been ruled upon by the Court,

17   then at that point the Court takes the finalized version

18   of the presentence report and that becomes one of the

19   primary sources of information from which the Court

11:16AM  20   calculates the guideline range and applies and weighs

21   these other sentencing factors that I mention.

22           I want to explain all of that to you really to

23   make this point.  You're pleading guilty to Count Five,

24   and it is understood that after sentencing, Counts One

11:16AM  25   through Four will be dismissed; but at sentencing, it is

1  fair game for the Court to consider any information that

2  has been reported by the government during the

3  presentence investigation phase, including any

4  information derived from its investigation that

11:17AM  5  surrounds the offense of conviction in this case.

6         So while you're not going to be convicted of

7  these other drug crimes, it could very well be that this

8  information is put before the Court and, if so, the

9  Court could take that information about these other

11:17AM  10  charges into account at the time of sentencing.  That's

11  also true, for that matter, with regard to any uncharged

12  conduct.

13         Any information that the government acquires in

14  the course of its investigation that surrounds and

11:18AM  15  relates to your offense of conviction is known as

16  relevant conduct, and I want to be sure you understand

17  that it's fair game for the Court to take relevant

18  conduct information into consideration at the time of

19  sentencing.  Do you understand that?

11:18AM  20         THE DEFENDANT:  Yes.

21         THE COURT:  Next, Mr. Chanthalangsy, we are

22  going to need to make sure that you admit to the facts

23  that make you guilty of the crime charged in Count Five.

24  The way we will do that is I'm going to ask the

11:18AM  25  government's attorney to state in open court the facts

1    that the government contends it could prove if the case

2    were to proceed to trial.

3             In effect, Mr. Roberts is going to be stating

4    the facts as set forth in Paragraph 5 of the plea

11:19AM   5    agreement; and you are welcome to follow along as he

6    does so, but please listen very carefully because when

7    he's finished with this statement of facts, the question

8    for you is going to be whether you agree with and admit

9    to the facts as stated.

11:19AM  10             Mr. Roberts?

11             MR. ROBERTS:  Thank your Honor.

12             Beginning January of 2017, Homeland Security

13    Investigations and the Rogers Police Department

14    initiated an investigation into a drug trafficking

11:19AM  15    organization operating in Northwest Arkansas.  Based on

16    said investigation, a search warrant was obtained for

17    the home of the defendant, Peng Chanthalangsy, which is

18    located in Benton County in the Western District of

19    Arkansas.

11:19AM  20             On or about March 13, 2017, the search warrant

21    was executed.  At the residence, law enforcement

22    confiscated illegal narcotics, as well as all digital

23    devices used to facilitate drug transactions.

24             During a subsequent forensic examination of the

11:20AM  25    defendant's Cyborg IBuyPower computer, examiners noted

images of child pornography.  At that time a second

search warrant was obtained to specifically examine the

defendant's computer for child pornography.

        During the preceding forensic examination,

multiple images of minors engaging in sexually explicit

conduct as defined by federal law were located.

Specifically the defendant's CyborgX IBuyPower computer,

that was determined to be manufactured outside the State

of Arkansas, contained approximately 2,000 images or

videos of child pornography.  One such image depicts a

prepubescent minor performing a sex act on an adult

male.

        Thank you, your Honor.

        THE COURT:  Thank you, Mr. Roberts.

        Mr. Chanthalangsy, do you understand that those

are the facts that the government contends it could

prove if the case proceeded to trial?

        THE DEFENDANT:  Yes.

        THE COURT:  Do you agree with and admit to each

and every one of those facts?

        THE DEFENDANT:  Yes.

        THE COURT:  And do you further agree the

government could prove those facts if the case were to

proceed to trial?

        THE DEFENDANT:  Yes.

1        THE COURT:  Mr. Schisler, can you state whether

2   or not you agree that the government could prove the

3   facts as stated by Mr. Roberts?

4        MR. SCHISLER:  I do agree, your Honor.

11:21AM    5        THE COURT:  All right.  Thank you.

6        Well, based on our discussion and explanation

7   today, Mr. Chanthalangsy, I'm now going to ask you:  How

8   do you plead to the charge of possession of child

9   pornography in child of federal law as set forth in

11:21AM   10   Count Five of the indictment?  Do you plead guilty or

11   not guilty?

12        THE DEFENDANT:  Guilty.

13        THE COURT:  All right.  Thank you very much,

14   sir.

11:21AM   15        It's going to be the finding of the Court in

16   this matter, number one, that Mr. Chanthalangsy is fully

17   competent and capable of entering an informed plea;

18   number two, that Mr. Chanthalangsy is aware of the

19   nature of the charge and the consequences of his guilty

11:21AM   20   plea; and number three, that the plea of guilty is a

21   knowing and voluntary plea supported by an independent

22   basis in fact which contains all of the essential

23   elements of the offense.

24        And therefore, sir, I am going to accept your

11:22AM   25   guilty plea.  You are adjudged guilty of the crime as

1    set forth in Count Five of the indictment, and you will

2    leave this courtroom convicted of that charge.

3         I'm going to defer acceptance of the plea

4    agreement, however, until such time as I can be informed

11:22AM    5    by the results of the presentence investigation.

6         Now, a plea agreement also contemplates a

7    forfeiture of certain devices.  A preliminary order of

8    forfeiture has been submitted to the Court for review.

9    Mr. Chanthalangsy, have you had a chance to review the

11:23AM    10    form and contents of this document entitled Preliminary

11    Order of Forfeiture?

12         THE DEFENDANT:  Yes, I have.

13         THE COURT:  And is this your signature on the

14    last page under the date of August 1st?

11:23AM    15         THE DEFENDANT:  Yes.

16         THE COURT:  And do you understand that you are,

17    in effect, consenting to forfeit all of the devices that

18    are itemized 1 through 7 on the first page of the order?

19         THE DEFENDANT:  Yes.

11:23AM    20         THE COURT:  All right.  The form of the order

21    appears appropriate to the Court.  The Court will sign

22    off on the preliminary order and ask that it be

23    published to the docket.

24         Officer Nguyen, I would ask that you begin the

11:23AM    25    presentence investigation in this case and report the

1    findings to counsel and to the Court.

2         Mr. Chanthalangsy, the presentence report

3    investigation itself takes about 90 days and then it

4    takes about 30 days after that to schedule you back in

11:24AM    5    here for a sentencing hearing.  So give or take a couple

6    of weeks, we hope to have you back here in about four

7    months for a sentencing hearing.

8         Upon conclusion of this hearing,

9    Mr. Chanthalangsy will be remanded to custody of the

11:24AM    10   United States Marshals Service pending the sentencing

11   hearing.

12        Is there anything further today, Mr. Roberts?

13        MR. ROBERTS:  No, your Honor.  Thank you.

14        THE COURT:  Mr. Schisler?

11:24AM    15        MR. SCHISLER:  No, your Honor.

16        THE COURT:  We're adjourned.

17        (Proceedings adjourned at 11:24 a.m.)

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3              I, Dana Hayden, Federal Official Realtime Court

4    Reporter, in and for the United States District Court

5    for the Western District of Arkansas, do hereby certify

6    that pursuant to Section 753, Title 28, United States

7    Code that the foregoing is a true and correct transcript

8    of the stenographically reported proceedings held in the

9    above-entitled matter and that the transcript page

10   format is in conformance with the regulations of the

11   Judicial Conference of the United States.

12             Dated this 13th day of March 13, 2018.

13

14

15

16             _Dana Hayden_____

17             Dana Hayden, CCR, RMR, CRR
               Federal Official Court Reporter

18

19

20

21

22

23

24

25